# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELIZABETH WHITTEN, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-04-539-FHS-SPS |

## REPORT AND RECOMMENDATION

The claimant, Elizabeth Whitten, pursuant to 42 U.S.C. § 205(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits under the Social Security Act. The claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred, because the ALJ incorrectly determined she was not entitled to supplemental security income. For the reasons discussed below, the Commissioner's decision should be REVERSED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work in the national economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account his age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born June 25, 1971, and was 33 years old on the date of the ALJ's decision. She has a high school education. The claimant has no past relevant work history. (Tr. at 17). The claimant alleges she has been unable to work since March 1, 1993, because of depression, hyperactivity, and broken bones due to having been beaten in her childhood. (Tr. at 16).

**Procedural History**

On January 13, 2003, the claimant protectively filed her application for Supplemental Security Income payments. This application was denied initially and upon reconsideration. On April 2, 2004, the claimant testified at a hearing before Administrative Law Judge ("ALJ") Michael A. Kirkpatrick in Ada, Oklahoma. On July 21, 2004, the ALJ issued an unfavorable decision. The Appeals Council denied the claimant's subsequent request for review on October 23, 2004. Accordingly, the administrative action is final in this case. 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. The ALJ found the claimant has the following residual functional capacity ("RFC"): she can lift and/or carry at least 50 pounds occasionally and 25 pounds frequently; stand and/or walk for at least six

hours total during an eight hour work day; sit for at least six hours during an eight hour work day; stoop occasionally; work in environments which do not involve concentrated exposure to respiratory irritants, such as fumes, dusts, and gases. (Tr. at 18-19). The ALJ found the claimant had the following mental RFC: to perform simple, routine tasks, but not detailed or complex tasks, and that she requires a task-oriented job which does not involve interaction with members of the general public, although she can interact appropriately with supervisors and coworkers. The ALJ concluded the claimant can perform a wide range of simple, routine, unskilled, "medium" work, or work which involves lifting no more than 50 pounds at a time, with frequent lifting and carrying of objects weighing up to 25 pounds. (Tr. at 19). The ALJ found the claimant was not disabled because she could perform other jobs in the national and regional economies, *e.g.*, kitchen helper, janitor/industrial cleaner, and machine operator. (Tr. at 26).

## Review

The claimant asserts the ALJ erred at step four by formulating an RFC that failed to include all of the claimant's mental and physical limitations. Specifically, the claimant contends that the ALJ improperly rejected the opinions of Judith Eckstein, Ph.D., and Jeff Koeppel, MSW. The undersigned Magistrate Judge finds no error in the handling of Mr. Koeppel's opinions but does find that the ALJ failed to properly analyze Dr. Eckstein's opinions. For this reason the decision of the Commissioner should be reversed.

The record shows that the claimant presented at the Cottage Grove Community

Hospital emergency room on April 14, 2001, with complaints of a headache that had lasted for approximately one week. The claimant told the doctor that she had a history of migraine headaches, but that they were controlled with the over-the-counter medications Excedrin and Tylenol. The claimant told the doctor that she had not used any migraine headache prescription medication and that she had not sought medical treatment sooner because of the demands of her job as a babysitter. The doctor diagnosed the claimant with "muscle contraction headache, probably mixed with a migraine." The claimant had no complaints of any back pain or respiratory symptoms, and there is no evidence in the medical records of any back or respiratory impairments. (Tr. at 131-132).

On April 20, 2001, the claimant presented again with complaints of a headache, and told the doctor that she had been to the emergency room the week prior, but that she still had a headache. The doctor's diagnosis was the claimant had an episode of sinusitis that was causing her to have a headache. (Tr. at 140).

On May 4, 2001, the claimant presented for a follow up visit and told the doctor that the medication that was prescribed on April 20, 2001, had worked and that her headache had cleared up within a day and a half of her previous visit. (Tr. at 140).

On August 17, 2001, the claimant presented again with complaints of right flank pain and wheezing at night. The doctor ordered a CT scan, of which the results of the abdomen were normal and revealed no evidence of a kidney stone, or of any other obstruction or other abnormality. The claimant told the doctor that she had a history of asthma for which she had been using an Albuterol inhaler several times per day in the past, but that the she had run out

of medication, and in fact, had not been taking any medicine at all for asthma in the recent past. She admitted on presentation that she continued to smoke cigarettes and had no complaints of back pain. (Tr. at 135).

On January 23, 2002, the claimant presented to South Lane Mental Health for an intake assessment. The claimant presented stating that she was distraught over the changes that had occurred in her relationship with her fiancé, David during the past two months. She stated that as a result of David threatening her with a knife, and her calling the police which led to his incarceration, she was given an ultimatum by her fiancé. The ultimatum was the option of either participating in relationship counseling with him at South Lane Mental Health or separating. The claimant, faced with this option, elected to try family counseling with her fiancé. This election was the purpose of her visit of January 23, 2002. (Tr. at 184). Marriage and family counselor Jeff Koeppel, MSW, QMHP, commented the claimant was clean and adequately dressed, that she was somewhat restless and anxious, that her speech was fast and hyperverbal and loud and pressured, that her eye contact was good, that she followed the thread of the conversation well, and her effect was appropriate. (Tr. at 187). Mr. Koeppel believed the claimant had an adjustment disorder with depression and anxiety, attention deficit/hyperactivity disorder, PTSD, and an amphetamine dependence. (Tr. at 187). The claimant and her fiancé returned to see Mr. Koeppel for relationship counseling on nineteen occasions from January 23, 2002, through February 21, 2003. The sessions focused on the couple's financial difficulties and on the criminal charges pending against David. (Tr. at 150-188). The couple returned to Mr. Koeppel for relationship counseling in

May and June of 2003, when David was having complaints about his probation officer, the police, and the legal process. (Tr. at 260-264).

On April 7, 2003, the claimant presented to Dr. Judith Eckstein, Ph.D., at Valley View Counseling for a mental status examination. (Tr. at 189). During the evaluation, Dr. Eckstein took copious notes of the claimant's stated history. Through the majority of the evaluation, the claimant's boyfriend was present and according to Dr. Eckstein, "had a tendency to answer questions for [the claimant], and both would go off on long tangents, not able to provide any simple answers to questions asked. At times, [the claimant's boyfriend] would correct [the claimant] about her answers he did not think were accurate and she would go along with his statements." (Tr. at 189-192). It was not until Dr. Eckstein started the mental status examination that she asked Mr. Williams to leave. In addition to a continued "history" of the claimant's mental status, the claimant was also given a series of cognitive task to perform during the mental status examination. (Tr. at 192). Dr. Eckstein found the claimant's information fund was lacking in terms of her responses to factual questions. Dr. Eckstein cited as examples, "[s]he thought there were between 11 or 12 days in a year, and [w]hen asked what the heart does, she stated that it "breaks" and then answered that it was to breathe." On the digit span subtest, the claimant could only repeat four digits forward and four backward. The claimant was able to memorize two out of three words over a five-minute time span, and her mathematical skills were quite weak when using the four basic operations. The claimant was only able to do very simple addition and subtraction. Dr. Eckstein found the claimant to be significantly below average in her cognitive functioning

and unable to handle funds awarded to her without a great deal of difficulty. Dr. Eckstein found that the claimant's memory and concentration problems would make it difficult for her to handle tasks independently, and that she may be unable to make a mental abstraction such that would help her better understand her past and present life situations. (Tr. at 192-193). Dr. Eckstein made the following diagnosis: Axis I, post traumatic stress disorder, dysthymia, attention deficit disorder; Axis II, dependent personality disorder, cognitive disorder NOS (most likely borderline intellectual functioning); Axis III, chronic asthma, migraine headaches, eye problems, arthritis and gum cyst; Axis IV, unemployment, poverty, social isolation, and unresolved past abuse issues; and, Axis V current GAF: 45. (Tr. at 194).

On April 24, 2003, the claimant presented for a mental RFC assessment by Paul Rethinger, Ph.D., a DDS physician. (Tr. at 195). Dr. Rethinger found the claimant to be moderately limited in the following categories: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to interact appropriately with the general public; and, the ability to set realistic goals or make plans independently of others. (Tr. at 195-196). Dr. Rethinger found the claimant to be capable of understanding, remembering and performing simple tasks, capable of maintaining a normal work schedule, able to work with coworkers, that she should have limited public contact, and that she would be able to adapt to normal workplace changes, but that she should have help in setting appropriate job goals in finding suitable employment. (Tr. at 197). As part of his examination, Dr. Rethinger also completed a PRT form. In completing the PRT, Dr. Rethinger found the claimant to have mild restrictions of activities of daily living;

moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and, no episodes of decompensation. (Tr. at 203).

On August 6, 2003, the claimant presented for a physical examination by Dr. Robert Tobias, M.D. (Tr. at 215). The claimant told Dr. Tobias that she suffers from low back pain, which she stated was caused by a fall approximately 11 years earlier. The claimant stated she had a history of ADHD and asthma. (Tr. at 215). Dr. Tobias performed a thorough physical examination of the claimant, and reported that the chest revealed some scattered expiratory wheezes and occasional rhonchi, and that the range of motion of the back was reduced, but that the claimant had normal range of motion of the neck and all of her other joints, and there was no evidence of any muscle spasms. Dr. Tobias did not note any other deficiencies or abnormalities during his examination. (Tr. at 215-230).

On August 27, 2003, the claimant presented to a DDS physician for a Physical RFC assessment. (Tr. at 222-230). The DDS physician found the claimant able to lift and/or carry 50 pounds occasionally and 25 pounds frequently. He also found the claimant able to stand for about six hours in a normal eight-hour workday, and able to sit for six hours in a normal eight-hour workday. (Tr. at 223). He determined that the claimant could push/pull without limitation, that the claimant was limited to occasional stooping, and that she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.. (Tr. at 223-226).

On August 27, 2003, the claimant also had a mental RFC performed by Burnard L. Pearce, Ph.D., a DDS doctor. The examiner found the claimant to be moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed

instructions, and the ability to interact appropriately with the general public. (Tr. at 231-232). Dr. Pearce was of the opinion the claimant could perform simple and some complex tasks, relate to supervisors and coworkers for work purposes, and adapt to simple work situations. (Tr. at 233). Dr. Pearce also completed a PRT form during the same session. He noted the claimant suffered from depression, post traumatic stress disorder, dependent personality, and a history of substance abuse/early remission. (Tr. at 239-244). He found the claimant had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and, no episodes of decompensation. (Tr. at 246).

On March 4, 2004, Mr. Koeppel completed a "Medical Source Statement-Mental" form. Mr. Koeppel indicated on the form that he believed the claimant was markedly limited in several different categories. Specifically, Mr. Koeppel found the claimant had marked impairments in 11 of the 20 categories on the medical source statement. (Tr. at 250-251).

The claimant recognizes that the opinions expressed by Mr. Koeppel in the MSS are not from an "acceptable medical source," *see Branum v. Barnhart,* 385 F.3d 1268, 1272 (10th Cir. 2004); 20 C.F.R. § 416.913(d) (describing "other" sources), but argues that those opinions should nevertheless be considered as to "credibility and consistency." It is not exactly clear what the claimant means by this, but it would appear that "credibility" refers to the claimant's account of the extent of her impairments and that "consistency" refers to the opinions expressed by Dr. Eckstein. In any event, the undersigned Magistrate Judge is

satisfied that the ALJ gave appropriate consideration to the opinions expressed by Mr. Koeppel. He gave them little weight because: (i) the opinions were not supported by medical documentation, *i. e.*, there were no references to clinical signs or reports of other providers; (ii) the opinions were inconsistent with the credible evidence in the record, including Mr. Koeppel's own treatment notes; and, (iii) the opinions were based primarily on the subjective complaints of the claimant, which ALJ found were not credible. (Tr. at 22). The ALJ was free to determine what weight to give Mr. Koeppel's opinions based on all the evidence before him, and the undersigned Magistrate Judge finds no error here. *Cf. Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997) ("[T]he ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all evidence in the record since a chiropractor is not a medical source."), *citing Diaz v. Shalala,* 59 F.3d 307, 313-14 (2d Cir. 1995) *and Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir. 1991).

The same cannot be said, however, for how the ALJ handled the opinions expressed by Dr. Eckstein in her report. Although these opinions were not entitled to controlling weight because Dr. Eckstein was not a treating physician, *see, e. g., Doyal v. Barnhart,* 331 F.3d 758, 763 (10th Cir. 2003) ("Absent an indication that an examining physician presented 'the *only* medical evidence submitted pertaining to the relevant time period,' the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."), *quoting Reid v. Chater,* 71 F.3d 372, 374 (10th Cir. 1995) [emphasis added in *Doyal*], the ALJ was nevertheless

required to weigh them against the following criteria: (i) the length of the relationship and the frequency of examination; (ii) the nature and extent of the relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the opinions were supported by relevant evidence; (iv) consistency between the opinions and the record as a whole; (v) the extent to which the opinion is rendered within an area of specialization; and (vi) any other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 416.927(d) ("Regardless of its source, we will evaluate *every* medical opinion we receive . . . we consider all of the following factors in deciding the weight we give to *any* medical opinion.") [emphasis added]. The ALJ wholly failed to do this analysis; he found Dr. Eckstein's report "less than helpful, and less than probative" simply because she relied on the claimant's subjective complaints and allowed the claimant's fiancé to participate in the interview (Tr. at 21-22). *See, e. g., Langley v. Barnhart,* 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.'"), *quoting McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") [emphasis in original]. It was particularly important for the ALJ to properly analyze Dr. Eckstein's opinions because he ultimately rejected them in favor of the opinions of two agency doctors who did not

examine the claimant. 20 C.F.R. § 416.927(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the weight to be given to the opinions of Dr. Eckstein. If this analysis results in the modification of the claimant's RFC, the ALJ should reconsider what work, if any, the claimant can perform and render a new disability determination based thereon.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. The parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this  29th  day of September, 2006.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**